James Everett Shelton
316 Covered Bridge Road
King of Prussia, PA 19406
(484) 626-3942
jeshelton595@gmail.com

Plaintiff, Pro Se

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FILED

SEP 2 4 2018

KATE BARKMAN, Clerk
By_____Dep. Clerk

| | | |
|---|---|---|
| JAMES EVERETT SHELTON<br>316 Covered Bridge Road<br>King of Prussia, PA 19406 | )<br>)<br>)<br>) | |
| Plaintiff, | ) | Civil Action |
| vs. | )<br>) | No. 2:18-cv-02070-NIQA |
| TARGET ADVANCE LLC<br>250 Avenue X, Second Floor<br>Brooklyn, NY 11223 | )<br>)<br>)<br>)<br>) | |
| Defendants | ) | Jury Trial Demanded |

## FIRST AMENDED COMPLAINT:

Plaintiff JAMES EVERETT SHELTON brings this action for damages, statutory

damages, court costs, and injunctive relief under rights pursuant to Federal Statute under 47

U.S.C. § 227, and 47 C.F.R. 64 for the *ultra vires* illegal actions and deliberate and knowing

tortious activity of TARGET ADVANCE LLC, in negligently and/or willfully contacting

Plaintiff via Plaintiff's telephone to solicit sales ("Sales Calls") utilizing an automatic telephone

dialing system ("ATDS calls" or "RoboCalls") in violation of the Telephone Consumer

Protection Act, 47 U.S.C. § 227 *et seq.* and related claims that form part of the same claim or

controversy. Plaintiff demands a trial by jury, and complains and alleges as follows:

### I.        Introduction

1

1.     Plaintiff James Everett Shelton ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2.     Plaintiff brings this action to challenge Target Advance's practices in the telephone solicitation of its products and services. Specifically, Plaintiff challenges Target Advance's and Target Advance's agents' illegal telephone solicitations by which it markets its products and services through its robocalls, and Target Advance's failure to maintain a Do-Not-Call list or Do-Not-Call policy.

3.     "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communication Commission.[1]

4.     The TCPA is designed to protect consumer privacy by prohibiting unsolicited telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

5.     Plaintiff alleges that Defendant Target Advance LLC ("Target Advance") placed multiple robocalls to Plaintiff's cellular telephone number for the purposes of advertising Target Advance's services, using an automatic telephone dialing system (ATDS), which is prohibited by the TCPA.

6.     Several of these calls were made after Plaintiff told Target Advance to stop calling, and after Plaintiff had sued and served the Defendant with the summons and original complaint.

7.     Plaintiff never consented to receive any of these calls.

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶ (July 10, 2015)

8.    All of the claims asserted herein arise out of Target Advance's illegal telephone

solicitation campaign and are a common fact pattern.

## II.    **Jurisdiction and Venue**

9.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

10.    Venue is proper in this court in that Defendants conduct business in, and a substantial

part of the events giving rise to plaintiff's claims occurred in, Pennsylvania's Montgomery

County. Plaintiff received the phone calls to his private mobile telephone number as a permanent

resident of Montgomery County. Defendant Target Advance conducts business in this judicial

district by calling Pennsylvania consumers. Plaintiff's telephone number has a (484)

Pennsylvania area code and is registered to Plaintiff's home address. Each of the Defendants has

sufficient minimum contacts with this county, and otherwise purposely avail themselves of the

markets in this county. Also, see *Lary V. The Doctors Answer, LLC* CV-12-S-3510-NE (N.D.

Ala. March 8, 2013.), a Federal Telephone Consumer Protection Act case, which held that

"venue is proper in the district where [plaintiff] resides because the injury did not occur when the

facsimile was sent…; it occurred when the [facsimile] was received."

## III.    **Parties**

11.    Plaintiff JAMES EVERETT SHELTON ("Plaintiff") is an individual who received the

alleged phone calls on his private mobile telephone line mentioned herein. Plaintiff is an adult

individual and citizen of the Commonwealth of Pennsylvania who has a residence of 316

Covered Bridge Road, King of Prussia, PA 19406.

12.    Defendant TARGET ADVANCE LLC ("Target Advance") is a New York corporation

with a registered principal address of 4203 Avenue M, Brooklyn, New York, 11234, which

transacts business in, *inter alia*, Montgomery County, Pennsylvania. Upon information and

belief, Target Advance's current address is actually 250 Avenue X, Second Floor, Brooklyn,

New York 11223. Target Advance is not registered to do business in the Commonwealth of

Pennsylvania, however, Target Advance markets and sells, *inter alia*, merchant cash advance

and/or business loan services to people in Pennsylvania.

## Background
### The Telephone Consumer Protection Act

**13.** In 1991, Congress enacted the TCPA to regulate the explosive growth of the

telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ...

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L.

No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do-Not-Call Registry

**14.** The National Do Not Call Registry allows consumers to register their telephone numbers

and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47

C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the

registration is cancelled by the consumer or the telephone number is removed by the database

administrator." Id.

**15.** The TCPA and implementing regulations prohibit the initiation of telephone solicitations

to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R.

§ 64.1200(c)(2).

The TCPA Prohibits Automated Telemarketing Calls

**16.** The TCPA makes it unlawful to make any call (other than a call made for emergency

purposes or made with the prior express written consent of the called party) using an automatic

telephone dialing system or an artificial or prerecorded voice ... to any telephone number

assigned to a ... cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA

4

provides for a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

17.     According to findings by the Federal Communications Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

18.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003). In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.

Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

5

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

### Factual Allegations

**19.** Target Advance provides business loans and/or "merchant cash advance" services.

**20.** A "merchant cash advance" is a form of alternative lending or "factoring".

**21.** Merchant cash advance brokers market their products and services as a way for people to get short-term working capital. In exchange for a one-time cash advance, the borrower pledges a percentage of its future receivables to the lender.

**22.** Target Advance uses telemarketing to promote its services.

**23.** Target Advance's telemarketing efforts also include the use of "automatic telephone dialing systems" or "robocalls" to transmit a message, as prohibited by 47 U.S.C. § 227(b)(1)(B).

**24.** At all times material hereto, Plaintiff was the subscriber of the telephone number 484-626-3942 and paid his cell phone bill through T-Mobile.

**25.** Plaintiff's personal cellular telephone number, 484-626-3942, has been successfully registered on the National Do-Not-Call Registry since June 26, 2015, more than 31 days prior to the calls.

**26.** On January 17, 2018 at 11:14 AM, Plaintiff received a call which displayed on his caller identification as 484-588-6273 to his cellular telephone number, 484-626-3942.

**27.** Plaintiff did not recognize the caller ID, so he did not answer.

**28.** On January 17, 2018 at 11:32 AM, Plaintiff tried to call the number back, but received no answer. Plaintiff then tried to call back once again at 11:32 AM, however, he could not identify who had called him.

6

**29.**    On January 22, 2018 at 1:38 PM, Plaintiff received another call from 484-588-6273. Once again, Plaintiff did not answer.

**30.**    Plaintiff thought the caller might be someone local or in the Philadelphia region, since they were using a (484) local area code.

**31.**    However, Plaintiff was incorrect. Defendants were utilizing an autodialer to employ "caller ID spoofing" to display false or fake caller ID, to make Plaintiff think it was a local number calling.

**32.**    On January 22, 2018 at 2:47 PM, Plaintiff called back the number which called him, 484-588-6273. After a brief pause, Plaintiff heard a balloon-popping sound and a machine noise; he was then connected with a live human being, "Brad", at Target Advance.

**33.**    Plaintiff then received a scripted sales pitch about business loans and/or merchant cash advance services.

**34.**    As a result of this conversation, "Brad Cozzi", a senior consultant at Target Advance, sent Plaintiff an e-mail from brad@targetadvance.com.

**35.**    During that call, Plaintiff took steps to ascertain the identity of the caller and feigned interest for this exact reason, namely by requesting that the caller send Plaintiff an e-mail with their company information. However, Plaintiff never consented to receiving any additional telemarketing calls. In fact, Plaintiff asked not to be called back, and said he would call Target Advance back if he was interested.

**36.**    As a point of fact, to the extent that "consent" was supplied during the call, that was done in order to discover the identity of the caller and for no other reason. Courts have held this to be legitimate and have not held such "consent" to be detrimental to a plaintiff bringing a TCPA action. *See* for instance, Bank v. Caribbean Cruise Line, which held that "Purporting to obtain

consent during the call, such as requesting that a consumer "press 1" to receive further information, does not constitute the prior consent necessary to deliver the message in the first place, as the request to "press 1" is part of the telemarketing call.... As the FCC has stated, the consent must be made before the call.

**37.** Despite not giving Target Advance consent or permission (verbally or in writing) to call back, Plaintiff received another call from the same caller ID 484-588-6273 the following day, January 23, 2018 at 3:32 PM. Plaintiff did not answer.

**38.** Plaintiff received another missed call from the same number, 484-588-6273, on January 24, 2018 at 1:28 PM.

**39.** On January 25, 2018 at 12:29 AM, Plaintiff received another call from 484-588-6273. Plaintiff answered and said "hello" into his phone repeatedly, heard a machine noise, then heard dead air, and the call was disconnected.

**40.** On February 20, 2018 at 11:56 AM, Plaintiff received another call from 484-588-6273. The call hung up before Plaintiff had the chance to answer.

**41.** On February 20, 2018 at 11:56 AM, within a few seconds, Plaintiff received another call from 484-588-6273. Plaintiff answered but the call immediately disconnected after 1 second. Such behavior is characteristic of an automatic dialer, and is termed illegal call abandonment. Often, such automatic dialers, either because they misidentify the caller as no voice on the line, or because there are not enough agents available to answer the call, will "abandon" the call.

**42.** Target Advance did not have the Plaintiff's prior express written consent to make these calls.

8

**43.**     In fact, before filing this lawsuit, the Plaintiff wrote to Target Advance on April 18, 2018 asking if they had his prior express written consent to make the calls, but Target Advance did not provide any evidence of consent.

**44.**     Plaintiff also requested in his e-mail to have his number placed on Target Advance 's internal Do-Not-Call list, and requested to receive a copy of Target Advance 's internal company Do-Not-Call policy.

**45.**     Defendants failed and/or refused to provide a written copy of their internal company Do-Not-Call policy to Plaintiff, despite two a written e-mail request and notice of Plaintiff's intent to file a formal claim.

**46.**     Pursuant to 47 CFR 64.1200(d)(1), a telemarketer is required, upon request, to send a consumer a written copy of their company Do-Not-Call Policy.

**47.**     Defendants failed and/or refused to put Plaintiff's number on their internal company Do-Not-Call list.

**48.**     On May 17, 2018, Plaintiff filed a Complaint in this Court against the Defendants. Defendants were served with the Complaint (again) on August 24, 2018.

**49.**     Despite being on notice that Plaintiff did not want to receive any telemarketing calls, and that Plaintiff was suing the Defendants for illegal telemarketing, on August 29, 2018 at 10:22 AM, Plaintiff received a call which displayed on his caller identification as 646-376-3591.

**50.**     Plaintiff does not believe this particular call was made using an autodialer, because it was a live sales call without any automated characteristics.

**51.**     Plaintiff answered and received a scripted sales pitch about business funding from Elijah "Eli" Gonzalez, who identified himself as a representative of Target Advance.

9

52.     For the sole purpose of identifying the company responsible for the telemarketing call,

Plaintiff pretended to be interested in funding and received an e-mail from Elijah Gonzalez,

elijah@targetadvance.com.

53.     After Plaintiff received the e-mail, while still on the phone with Elijah Gonzalez, Plaintiff

reminded Mr. Gonzalez that he was currently suing Target Advance for illegal telemarketing.

54.     Plaintiff demanded an explanation for why Target Advance was still calling him, despite

the fact that Plaintiff had told Target Advance to stop calling and despite the fact that Plaintiff

had gone to the length of filing the instant lawsuit against Target Advance.

55.     Plaintiff asked not to receive any more calls from Target Advance. Mr. Gonzalez

apologized for making the sales call and promised Plaintiff he would not call Plaintiff again.

56.     Mr. Gonzalez explained that Target Advance obtained its data from a lead generation

company, and that Target Advance uses an "automatic system" to dial numbers for sales

purposes.

57.     Despite his assurances that Plaintiff would not be called again, Plaintiff received two (2)

more automated calls from Target Advance, using the spoofed caller identification

484-588-6273, on August 29, 2018 at 11:03 AM and 11:04 AM.

58.     These calls were made using automated dialing technology. These two calls happened

within seconds of one another, which is an incredibly short amount of time to receive a call back.

Plaintiff attempted to answer both calls but before he could do so, the phone calls disconnected

and appeared in Plaintiff's call log as "missed calls". Such behavior is characteristic of an

automatic dialer, and is termed illegal call abandonment. Often, such automatic dialers, either

because there are not enough agents available to answer the call, or due to technical malfunction,

will "abandon" the call before the recipient even has the chance to answer.

10

**59.** At no time did Plaintiff provide his consent to receive any calls from Target Advance and/or its agents.

**60.** Prior to these unsolicited calls, the Plaintiff has never done any business with Target Advance and Plaintiff never provided Target Advance with his cellular telephone number.

**61.** To the extent Defendants contend that they obtained consent or agreement from Plaintiff for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained. In any event, consent is an affirmative defense under the TCPA, this defense is unavailable unless Defendants can show that they had prior express consent in writing, and that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and maintaining records documenting such access. Defendants did not have prior express written consent to such calls from Plaintiff, and did not produce any such written consent, even though the Plaintiff contacted Target Advance inquiring about the calls before filing this lawsuit.

**62.** Additionally, to the extent Plaintiff seeks to recover damages for these violations, see Charvat v. NMP, LLC, in which the Sixth Circuit Court of Appeals held that it is possible to allege violations of BOTH subsections of 47 USC § 227(b) [robocalls] and 47 USC § 227(c) [other violations], allowing for multiple violations per call. See also, Lary v. Trinity Physician Fin. & Ins. Servs., in which the 11th Circuit, under 6th Circuit guidance in the Charvat cases, found that it is possible, beyond alleging multiple violations per call based on overall subsection (as in the Charvat case), to allege multiple violations within each subsection, such as the failure

to place a number on an internal DNC or provide a copy of a do-not-call policy (both of which are violations of 47 CFR 64.1200(d)(1) and (d)(3), and 47 USC § 227(c) [ie. Subsection C]).

**63.** Plaintiff is using an identical method of calculating damages under the TCPA to that of multiple Judges in this Court, including District Judge Legrome D. Davis of the United States District Court for the Eastern District of Pennsylvania, in the case of Shelton v. Doan Solutions, LLC 2:17-cv-02368 (Doc. 5). In his opinion determining damages in a default judgment motion, Judge Davis found, under Sixth and Eleventh Circuit guidance, that the TCPA's "Do-Not-Call List" provision and "Do-Not-Call Policy" provisions were implied as causes of action under 47 CFR 64.1200, et. seq. and that the procedural violations of failing to put Plaintiff on Defendant's do-not-call list or provide Plaintiff a copy of Defendant's do-not-call policy were separate procedural violations of 47 C.F.R 64.1200(d)(1) and (d)(3), actionable under 47 U.S.C §227(c), in addition to violations of 47 U.S.C § 227(b)(1)(A) and 47 U.S.C § 227(c)(3)(F).

**64.** In *Andrew Perrong v. Tranzvia LLC*, No. 2:17-cv-03664, District Judge Joel H. Slomsky of the United States District Court for the Eastern District of Pennsylvania also ruled, after hearing and good cause shown, that the TCPA's "Do-Not-Call List" provision and "Do-Not-Call Policy" provisions were implied as causes of action under 47 CFR 64.1200, et. seq. and that the procedural violations of failing to put Plaintiff on Defendant's do-not-call list or provide Plaintiff a copy of Defendant's do-not-call policy were separate procedural violations of 47 C.F.R 64.1200(d)(1) and (d)(3), actionable under 47 U.S.C §227(c), in addition to violations of 47 U.S.C § 227(b)(1)(A) and 47 U.S.C § 227(c)(3)(F). Judge Slomsky awarded the plaintiff treble damages of $1,500 for each instance of "failure to provide a copy of defendant's Do-Not-Call policy" and $1,500 for each instance of "failure to put plaintiff's number on defendant's Do-Not-Call list", for a total judgment award of $45,000.

12

**65.**    Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

**66.**    Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with T-Mobile as a cellular telephone number and is used for personal purposes, and is a residential telephone. **67.** These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

**68.**    Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

**69.**    The following is a spreadsheet detailing the telemarketing calls Plaintiff received from Target Advance.

| Calls to Plaintiff's Cell Phone (484) 626-3942 | | | | |
|---|---|---|---|---|
| **Date:** | **Time:** | **Caller ID:** | **Notes:** | **ATDS Used?** |
| 1/17/2018 | 11:14 AM | 484-588-6273 | Missed Call | Yes |
| 1/22/2018 | 1:38 PM | 484-588-6273 | Missed Call | Yes |
| 1/23/2018 | 3:32 PM | 484-588-6273 | Missed Call | Yes |
| 1/24/2018 | 1:28 PM | 484-588-6273 | Missed Call | Yes |
| 1/25/2018 | 12:29 PM | 484-588-6273 | ATDS call | Yes |
| 2/20/2018 | 11:56 AM | 484-588-6273 | Missed Call | Yes |

13

| 2/20/2018 | 11:56 AM | 484-588-6273 | ATDS call, which abandoned after 1 second | Yes |
| 8/29/2018 | 10:22 AM | 646-376-3591 | Spoke with Elijah Gonzalez | No |
| 8/29/2018 | 11:03 AM | 484-588-6273 | Missed Call | Yes |
| 8/29/2018 | 11:04 AM | 484-588-6273 | Missed Call | Yes |

## Causes Of Action

### First Cause of Action

(Negligent Violation of the TCPA "ATDS" Prohibition, 47 U.S.C. § 227 et seq.)

**70.** Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**71.** As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

**72.** Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Second Cause of Action

(Knowing and/or Willful Violation of the TCPA "ATDS" Prohibition, 47 U.S.C. § 227 et seq.)

**73.** Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**74.** As a result of Defendants' and Defendants' agents knowing and/or willful violations

14

of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

75.     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Third Cause of Action

(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

76.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

77.     As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

78.     Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Fourth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

79.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

80.     As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

15

**81.**  Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Fifth Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

**82.**  Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**83.**  As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

### Sixth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

**84.**  Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**85.** As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

### Seventh Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

**86.**  Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**87.**  As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR

64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

### Eighth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

**88.**      Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**89.**      As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

### WHEREFORE, Plaintiff prays for relief against defendants, and each of them, as follows:
### IV.      Prayer for Relief

On Causes of Action 1-8:

  1.  For awards of $500 for each negligent violation as set forth in actions 1-8.

  2.  For awards of $1,500 for each knowing and/or willful violation as set forth in actions 1-8.

  3.  Injunctive relief against Defendants, and each of them, to prevent future wrongdoing; Total statutory damages: **$34,500** (Ten counts each of: "ATDS Call", Nine Counts of "Sales call to a number registered on the National Do-Not-Call Registry", three (3) counts of "Failure to Put Plaintiff's Number on Defendants' Do-Not-Call list", and one (1) count of "Failure to provide a copy of Defendant's Do-Not-Call Policy", with treble damages for each.)

  4.  Prejudgment interest at the maximum legal rate;

  5.  Costs of suit herein incurred; and

6. All such other and further relief as the Court deems proper.

## V. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

*James E Shelton*

Dated: September 20, 2018

James Everett Shelton
*Plaintiff, Pro Se*
316 Covered Bridge Road
King of Prussia, PA 19406
Phone: 484-626-3942
Jeshelton595@gmail.com

18

## **VERIFICATION**

I, JAMES EVERETT SHELTON, Plaintiff, Pro Se, verify that the facts set forth in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that the statements made herein are subject to the penalties of 18 PA. C.S. § 4904 related to unsworn falsification to authorities.

Dated: September 20, 2018

_James E Shelton_

JAMES EVERETT SHELTON

19

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2018, I served a copy of Plaintiff's Amended Complaint via U.S. Mail to:

Norman M. Valz, Esq.
205 Arch St - 2nd Floor
Philadelphia, PA 19106

*/s/ James Everett Shelton*
James Everett Shelton

20