# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES EVERETT SHELTON, | |
| Plaintiff | |
| v. | Case No. 2:18-cv-02070 |
| TARGET ADVANCE LLC | |
| Defendants | Honorable Nitza I. Quiñones Alejandro |

**PLAINTIFF'S OPPOSITION TO DEFENDANT TARGET ADVANCE LLC'S MOTION
TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## INTRODUCTION

Plaintiff James Everett Shelton ("Plaintiff") filed this suit alleging that Target Advance LLC("Target Advance") made at least ten (10) unwanted robocalls using an automatic telephone dialing system ("ATDS") to his cellular telephone line, which are prohibited by the Telephone Consumer Protection Act ("TCPA"). *See* 47 U.S.C. § 227(b)(1)(A)(iii). The calls were made despite the fact that Plaintiff's telephone number was on the National Do Not Call Registry.

In response to these straightforward claims, Target Advance launches an attack on the Plaintiff claiming that he falls outside the TCPA's "zone of interests" and asserts that consumers who receive illegal telemarketing calls do not suffer any injury following the United States Supreme Court's decision in *Spokeo v. Robins,* 136 S.Ct. 1540 (2016). This is an argument that courts have repeatedly rejected in the TCPA context, including the Third Circuit Court of Appeals in 2017. Defendants cite Stoops v. Wells Fargo Bank, N.A., 197 F. Supp. 3d 782 (W.D. Pa. 2016), arguing that Plaintiff is a "professional plaintiff". Setting aside the meritless nature of this argument, what Defendants fail to mention, however, is that this case has been repeatedly rejected by various courts and that this case bears no similarities to this present case.

This court need look no further than *Abramson v. Oasis Power Llc_ 2018 U.S. Dist. LEXIS 1290* when deciding this Motion. In the Oasis Power TCPA case, the Western District of Pennsylvania rejected defendant Oasis Power's Motion to Dismiss for Failure to State a Claim and for Lack of Standing, which is identical to the Motion filed here in this case[1]. See Exhibit A, the Report and Recommendations of Magistrate Judge Lisa Pupo Lenihan, which Plaintiff suggests this Court should closely follow and adopt when deciding this Motion to Dismiss. In that Report and Recommendations, the *Oasis Power* court covered every issue (and more) brought up by the defendants in this case, including Article III standing, no injuries suffered, the

---
[1] Oasis Power's Motion to Dismiss is attached as Exhibit B.

issue of "professional plaintiffs", and Stoops. On August 28, 2018, District Judge Cathy Bissoon entered an Order adopting the Magistrate Judge's Report and Recommendations, and denied Oasis Power's Motion to Dismiss.

For the following reasons, Defendants' motion to dismiss should be DENIED in its entirety.

## BACKGROUND

The Plaintiff brought this action under TCPA, which was enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012). Plaintiff's claim is that Target Advance violated the TCPA by contacting him on his cellular telephone repeatedly in January, February, and August, 2018. ECF No. 16 at ¶¶ 26, 32, 49, 57. Target Advance did so in order to try to secure Plaintiff as a customer of its debt relief and/or debt consolidation services. *Id.* at ¶ 19-22.

## LEGAL STANDARD

A Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) is granted where the complaint fails to assert "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. The question is not whether the claimant "will ultimately prevail… but whether his complaint [is] sufficient to cross the federal court's threshold." Skinner v. Switzer, 562 U.S. 521, 529-30 (2011) (internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context- dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 98 (3rd Cir. 2010). In deciding a 12(b)(6) motion and when considering the legal sufficiency of a claim, courts accept factual

allegations as true, drawing all reasonable inferences therefrom in the favor of the non-moving party. ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994). See also, Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). For this reason, district courts strongly disfavor Rule 12(b) (6) motions. Melo-Sonics Corp. v. Cropp, 342 F.2d 856 (3d Cir.1965); Kuromiya v. United States, 37 F. Supp. 2d 717, 722 (E.D.Pa.1999). A court must only dismiss a complaint if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." H.J. Inc., 492 U.S. at 249-50, 109 S. Ct. 2893 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)); Neitzke v. Williams, 490 U.S. 319, 326-327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989). Finally, "if a [claim] is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008).

1. **12(b)(1) and Article III Standing**

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000). An injury-in-fact is "an invasion of a legally protected interest" that is "concrete and particularized." *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 762-63 (3rd. Cir. 2009) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S.

4

555, 560 (1992). "[T]he court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to Plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

## ARGUMENT
### 1. <u>Plaintiff Falls within the TCPA's "Zone of Interests"</u>

Target Advance argues that Plaintiff does not fall within the TCPA's "zone of interests" because he has previously filed cases to vindicate his rights for illegal telemarketing calls. The Third Circuit Court of Appeals considered the TCPA's "zone of interests" in *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316 (3d Cir. 2015), holding that "a regular user of the phone line who occupies the residence being called undoubtedly has the sort of interest in privacy, peace, and quiet that Congress intended to protect." *Id.* at 326. The Third Circuit further stated that "because the TCPA is a remedial statute, it should be construed to benefit consumers." *Id.* at 327. Here, there is no ambiguity concerning the TCPA's application to Plaintiff. This action was brought by the recipient of numerous unsolicited telemarketing robocalls to enforce a statute designed to protect recipients of unsolicited telemarketing calls. The meaning of the statute is plain, and the Court need go no further.

Notwithstanding the language of the statute, Target Advance contends that Plaintiff "drums up TCPA litigation", and therefore should be stripped of the TCPA's protections. On what evidence, other than its own speculation and apparent resentment for being sued by Plaintiff, does Target Advance base the assertion that Plaintiff wanted to be called? That Plaintiff has filed lawsuits to *stop* illegal telemarketing calls and that his company's website informs telemarketing companies not to call his number on the National Do Not Call Registry or he will act against the company. Plaintiff's activities as a consumer advocate empowered by the congressionally-conferred private right of action to enforce the TCPA, supports one conclusion:

that Plaintiff, a private citizen motivated to fight back against illegal telemarketers, is exactly the sort of plaintiff Congress intended the TCPA to protect, and fits squarely within the TCPA. Rather, by actively holding defendants to account for their illegal acts via the private right of action afforded to consumers by Congress, Plaintiff is doing ***exactly*** what Congress intended—he is enforcing the law. *See Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005) (recognizing that fixed award liquidated damages under the TCPA demonstrate the intent to incentivize aggrieved parties to act as "private attorneys general").

Target Advance's support for its position comes from *Stoops v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 82380 (W.D. Pa. June 24, 2016). However, a glaring factual distinction between that case and this matter is that the plaintiff in *Stoops* conceded that she purchased cell phones for the *sole purpose* of manufacturing TCPA claims. *See Id.* at *32 ("Q. Does anyone you know ever call you at these phone numbers? A. No, ma'am. Q. Did you ever use any of these phone numbers to call anyone? A. No, ma'am…Q. How did you use this phone number after it was activated, if at all? A. For my business. Q. Okay. When you say for your business, what do you mean? A. Suing clients like yours, Wells Fargo, for violating the TCPA.") *Stoops*, ECF No. 54-7.

Stoops purchased "at least 35 cell phones and cell phone numbers with prepaid minutes for the purpose of filing lawsuits under the Telephone Consumer Protection Act." *Stoops*, 197 F. Supp. 3d at 788. She selected Florida telephone numbers for these cell phones "because there is a depression in Florida, where people would be usually defaulting on their loans or their credit cards." Id. She collected a shoe box full of cell phones to fish for accidental wrong number calls,

id. at 796 (alteration omitted), and carried all 35 phones with her whenever she traveled, Deposition of Melody Stoops at 149-50 (ECF pp. 37-38), *Stoops*.

Defendants' factually and procedurally inapposite reliance on Stoops should likewise be rejected by this Court. Here, there is no such evidence that Plaintiff purchases or uses telephones for the sole purpose of bringing lawsuits under the TCPA. There's a good reason for that, it's not true. *See* Exhibit C, Affidavit of James Everett Shelton at ¶ 10. The phone that was called promoting Target Advance's services is the only cellular telephone that Plaintiff owns. *Id.* at ¶ 2. That phone is also the number used for the Plaintiff's business, Final Verdict Solutions. *Id.* at ¶ 4. Final Verdict Solutions was registered with the Commonwealth of Pennsylvania on March 7, 2016, is in the judgment collection business, and has successfully collected approximately 30 judgments totaling more than $100,000, and has outstanding judgment receivables currently worth more than $600,000. *Id.* at ¶ 5-7. In other words, it's a successful new small business. The simple fact of the matter is that Plaintiff does not collect telephones like the plaintiff in *Stoops* in order to "drum up TCPA litigation" like Target Advance alleges[2], but instead will fight back when companies illegally contact him at his number listed on the National Do Not Call Registry.

With good reason, federal courts have been skeptical of defendants attempting to paint TCPA cases with a broad brush invoking *Stoops*. *See e.g. Jones v. Revenue Assistance Corp.*, No. 14-10218-GAO, 2016 U.S. Dist. LEXIS 136993, at *16-17 (D. Mass. Aug. 31, 2016) ("Although Defendant argues that Plaintiff's only source of income since 2012 has been lawsuits, unlike the

---

[2] Recognizing that these realities are fatal to their position, Target Advance attempts to recast Plaintiff's website as a business for TCPA lawsuits by claiming that his notice to telemarketers not to contact him is an admission, when instead it is an unfortunately necessary supplement to his inclusion on the National Do Not Call Registry to attempt to put companies on notice that he does not want their telemarketing calls. As this lawsuit, and the others he has filed, make clear, not all telemarketing companies respect the National Do Not Call Registry or Plaintiff's wishes, despite this notice.

plaintiff in Stoops, Jones has not admitted that he "files TCPA actions as a business."); *Evans v. Nat'l Auto Div., L.L.C.*, No. 15-8714, 2016 U.S. Dist. LEXIS 123660, at *8 (D.N.J. Sept. 12, 2016) ("As a consumer complaining of receiving intrusive telemarketing calls, Plaintiff falls directly within the zone of interests protected by the TCPA… *Stoops* is distinguishable from this case on the grounds that the plaintiff in that case acknowledged that she only purchased cell phones in order to file TCPA lawsuits.") In fact, as one federal court stated when distinguishing *Stoops* in *Mey v. Venture Data, LLC,* 245 F. Supp. 3d 771 (N.D.W. Va. 2017):

> It is true that the plaintiff has brought a number of TCPA cases. It is further true that she has telephone answering and recording equipment which is more sophisticated than that of the average consumer. It is not true that she seeks to receive such calls. She does nothing to attract the calls; in fact, her telephone number is listed on the National Do Not Call Registry. Rather, she uses her equipment to record and document TCPA calls when they do occur.
>
> This does not deprive the plaintiff of standing any more than the purchase of a burglar alarm would indicate that the homeowner wanted her house to be broken into.
>
> In support of its argument, POS cites *Stoops* v. Wells Fargo Bank, N.A., 197 F.Supp.3d 782 (W.D. Pa. 2016). In *Stoops*, the district court found that the plaintiff did not have standing to sue when she suffered no injury-in-fact. The plaintiff in *Stoops*, who resided in Pennsylvania, purchased and maintained over thirty cell phones with Florida telephone numbers and admitted to doing this because she knew the locations she selected in Florida were economically depressed and included people who would be defaulting on their loans or their credit cards. The plaintiff waited for the phones to ring; she sometimes answered the calls and told the callers to stop, but she testified her hope was that the calls would continue so she could treble her damages…
>
> On the other hand, in Fitzhenry v. ADT Corp., 2014 U.S. Dist. LEXIS 166243, 2014 WL 6663379, at *5 (S.D. Fla. Nov. 3, 2014), the Court held that "[a]though Plaintiff may have created a home environment that allows him to document telemarketing calls better than most consumers, the Court is not convinced that Plaintiff is outside of the TCPA's zone of interest…
>
> This Court declines to follow *Stoops*. This plaintiff did not try to receive calls from other states. She secured equipment to document calls that came to her home. While POS is understandably frustrated by Ms. Mey's efficacy, she is doing exactly what Congress intended —enforcing the law.

Just like the plaintiff in *Mey*, Plaintiff has placed his number on the National Do Not Call Registry, and on the Pennsylvania Do Not Call list, and does not want these unwelcomed calls, but will not vacillate in filing a claim against companies who illegally contact him, and this is exactly what the TCPA was intended for.

Closely analogous to this lawsuit is *Abramson v. CWS Apt. Homes, LLC*, No. 16-426, 2016 U.S. Dist. LEXIS 146627 (W.D. Pa. Oct. 24, 2016), where the Plaintiff filed a putative class action under the TCPA for a single automated telemarketing call, and the defendant asserted that Mr. Abramson, following the *Stoops* decision in the same district that *Stoops* was decided, did not suffer an injury in fact as he had filed more than 300 lawsuits (approximately more than ten times the number of lawsuits Plaintiff has filed) to vindicate his rights under the TCPA. In denying the motion to dismiss, the Court found:

> Abramson suffered a concrete harm analogous to the common law tort of invasion of privacy. Congress has determined unrestricted telemarketing "can be an intrusive invasion of privacy." In line with Congress' finding, courts hold "a plaintiff demonstrates a violation of privacy interests, and therefore an injury-in-fact, after receiving automated calls" in violation of the Act. Abramson alleges CWS sent him the offending text message despite his lack of consent to receive telemarketing and his lack of business dealings with CWS. Abramson also claims he never provided CWS with his cell phone number. These facts adequately demonstrate Abramson suffered a concrete injury akin to a violation of his privacy interests.
> We reject CWS's argument Abramson's pursuit of his rights under the Act in other lawsuits demonstrates the lack of an injury. As Abramson adequately pleads a concrete and particularized injury, he satisfies Article Ill's standing requirements. Abramson's decision to enforce his rights under the Act does not negate the existence of a cognizable injury.

*Id.* at *6-7 The facts are very similar for Plaintiff; he received at least ten (10) solicitation calls despite never doing business with the Defendants and never provided them with his phone number prior to receiving the automated calls.

**Plaintiff Has Established that he Suffered Multiple Concrete Injuries**

In *Spokeo*, the Supreme Court confirmed that a plaintiff must plead a concrete and particularized injury, but clarified that an "intangible" injury is sufficient to confer Article III standing. Since *Spokeo,* district courts have repeatedly held that plaintiffs who allege under the TCPA that telemarketing calls to invade their privacy or are a nuisance, or who complain that the calls have occupied their phone lines preventing legitimate communications, have established Article III standing.[3] In fact, earlier this year, the Third Circuit Court of Appeals held:

> [W]e conclude that the injuries alleged by Susinno are concrete for two reasons. First, Congress squarely identified this injury. The TCPA addresses itself directly to single prerecorded calls from cell phones, and states that its prohibition acts "in the interest of [ ] privacy rights." 47 U.S.C. § 227(b)(2)(C). The congressional findings in support of the TCPA likewise refer to complaints that "automated or prerecorded telephone calls are a nuisance [and] . . . an invasion of privacy." Pub. L. 102-243, § 2. We therefore agree with Susinno that in asserting "nuisance and invasion of privacy" resulting from a single prerecorded telephone call, her complaint asserts "the very harm that Congress sought to prevent," arising from prototypical conduct proscribed by the TCPA. App. 11 (First Amended Complaint); *see also Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (finding two unwanted text messages constituted [**10] a concrete injury under the TCPA, as they "present the precise harm and infringe the same privacy interests Congress sought to protect")…
>
> Traditionally, a plaintiff's "privacy is invaded" for the purpose of an intrusion upon seclusion claim by telephone calls "only when [such] calls are repeated with such persistence and frequency as to amount to . . . hounding." Intrusion upon

---

[3] *See Cabiness v. Educ. Fin. Sols.*, No. 16-cv-01109-JST, 2016 WL 5791411 (N.D. Cal. Sept. 1, 2016) (a TCPA violation "necessarily harms the recipient of the unwanted calls such that the statutory violation is sufficient on its own to constitute an injury in fact"); *Cour v. Life360, Inc.*, No. 16-CV-00805-TEH, 2016 WL 4039279, at *2 (N.D. Cal. July 28, 2016) (rejecting Life360's argument that invasion of privacy is insufficient to confer Article III standing); *Juarez v. Citibank, N.A.*, No. 16-CV-01984-WHO, 2016 WL 4547914, at *3 (N.D. Cal. Sept. 1, 2016) ("Juarez's allegation that he received repeated unwanted calls that caused him aggravation, nuisance, and an invasion of privacy, is sufficient to allege a 'concrete' and 'particularized' injury that establishes standing under *Spokeo*."); *Krakauer v. Dish Network L.L.C.*, No. 1:14-CV-333, 2016 WL 4272367, at *2 (M.D.N.C. Aug. 5, 2016) ("While class members did not necessarily pick up or hear ringing every call at issue in this case, each call created, at a minimum, a risk of an invasion of a class member's privacy" for purposes of Article III standing); *Caudill v. Wells Fargo Home Mtg., Inc.*, Civ. No. 5:16–066, 2016 WL 3820195, at *2 (E.D. Ky. July 11, 2016) (noting that calls caused harms "such as the invasion of privacy [that] have traditionally been regarded as providing a basis for a lawsuit in the United States").

Seclusion, Restatement (Second) of Torts § 652B, cmt d (1977). The Second [**11] Restatement suggests that because "two or three" [*352] calls would not be "highly offensive to the ordinary reasonable [person]," they traditionally would provide no cause of action. *Id.* Yet when Congress found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," *Van Patten*, 847 F.3d at 1043, it sought to protect the same interests implicated in the traditional common law cause of action. Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing "legally cognizable injuries." *Spokeo*, 136 S. Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress.

For these reasons, we hold that Susinno has alleged a concrete, albeit intangible, harm under the Supreme Court's decision in *Spokeo*.

*Susinno v. Work Out World Inc.,* 862 F.3d 346, 351-52 (3d Cir. 2017). This Court should reach the same result here.

As explained below, Plaintiff suffered at least four concrete injuries that have been recognized under the common law, or by Congress: (1) invasion of privacy and a nuisance; (2) occupation of Plaintiff's cellular telephone; (3) wasted time; and (4) economic harm from the use of his cell phone. Each injury alone is sufficient in and of itself to establish Article III standing.

Plaintiff is a student at Case Western Reserve University in his senior year as an undergraduate. These calls annoyed him and distracted him from his work as a student. This is a valid concrete injury in and of itself.

    a. <u>Defendant's Calls Invaded Plaintiff's Privacy and Were a Nuisance</u>

Nuisance and invasion of privacy are the precise harms that Congress sought to prevent in enacting the TCPA. Here, the Plaintiff has alleged that he suffered particularized and concrete injuries because the calls at issue were a nuisance, forced him to incur expenses, and violated his privacy rights—the exact harms that Congress sought to prevent in enacting the TCPA. *See* 47 U.S.C. § 227 (Congressional Findings); *see also Owens Ins. Co. v. European Auto Works, Inc.*,

11

695 F.3d 814, 819-20 (8th Cir. 2012) ("[T]he ordinary meaning of the term 'right of privacy' easily includes violations of the type of privacy interest protected by the TCPA.").

When Congress established the TCPA in 1991, it did so to protect consumers from the "nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate." *Rules & Regulations Implementing the Telephone Consumer Protection Act*, 30 F.C.C.R. 7961, 7979 (2015). Robocalls are, as the Act's sponsor put it, "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30,821–30, 822 (1991) (Statement of Sen. Hollings). And, "like the buckets enchanted by the Sorcerer's Apprentice, [they] continue until stopped by their true master." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639 (7th Cir. 2012); *see also LaVigne v. First Cmty. Bancshares, Inc.*, No. 1:15-CV-00934-WJ-LF, 2016 WL 6305992, at *7 (D.N.M. Oct. 19, 2016) ("The TCPA codifies the application of a long-recognized common law tort of invasion of privacy, and the Court would add the tort of nuisance as well, for a particularly intrusive type of unwanted conduct: unauthorized 'robocalls.'"). Plaintiff filed this lawsuit to combat the proliferation of intrusive, nuisance telemarketing practices violative of Plaintiff's privacy rights. *See* ECF No. 16 at ¶¶ 1, 2. Because these harms are the very harm that Congress sought to prevent in enacting the TCPA, they are sufficiently "concrete" to satisfy Article III injury in fact standing as articulated in *Spokeo*.

b. <u>Defendant Harmed Plaintiff by Occupying his Cellular Telephone Line.</u>

One purpose of the TCPA is to "keep[] telephone lines from being tied up." *American States Ins. Co. v. Capital Assocs.*, 392 F.3d 939, 942 (7th Cir. 2004). Just as the privacy interests identified in the TCPA are grounded in the common law tort of invasion of privacy, the harm caused by unwanted telemarketing calls to cell phones has a close relationship to the harm

recognized by the ancient common law tort "trespass to chattels." *Mey v. Got Warranty, Inc*., No. 5:15-CV-101, 2016 WL 3645195, at *6 (N.D.W. Va. June 30, 2016). Indeed, courts have repeatedly held that the electronic intrusion upon another person's computerized electronic equipment, even if temporary, constitutes trespass to chattels. *See, e.g., Czech v. Wall St. on Demand,* 674 F. Supp. 2d 1102, 1122 (D. Minn. 2009) (declining to dismiss cell phone owner's trespass to chattels claim against sender of unwanted text messages).

In *Mey v. Got Warranty, Inc*., the court found trespass to chattels to be "a close analog for a TCPA violation" and held that the defendant's occupation of the plaintiff's telephone line was a concrete injury sufficient to establish Article III standing for the plaintiff's TCPA claim. 2016 WL 3645195, at *6. The *Mey* court thus denied the defendant's motion to dismiss for lack of standing, explaining that "the TCPA can be viewed as merely applying this common law tort to a 21st-century form of personal property and a 21st-century method of intrusion." *Id.* This Court should reach the same result here. As in *Mey,* Plaintiff received illegal telemarketing calls on his cell phone, which occupied the line, and prevented Plaintiff from engaging in legitimate communications. *See* Dkt. No. 1 at ¶ 67 .

*Spokeo* also recognized that an injury would satisfy Article III's "concreteness" requirement if the injury "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 2016 WL 2842447 at *7. Invasion of privacy is just such a harm long recognized by the common law. Almost all states recognize invasion of privacy as a common law tort. *See* Eli A. Meltz, *No Harm, No Foul? Attempted Invasion of Privacy and the Tort of Intrusion Upon Seclusion*, 83 Fordham L. Rev. 3431, 3440 (May 2015) (state-by-state survey; "Currently, the vast majority of states recognize the intrusion strand of invasion of privacy either under common law or by statute"). In enacting

the TCPA, Congress repeatedly recognized that telemarketing calls are violative of consumers' privacy rights. The right to privacy is also protected under the Constitution. *See, e.g.*, *Lawrence v. Texas*, 539 U.S. 558, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972). Accordingly, as the protections afforded consumers under the TCPA and FCRA have a close relationship to the right of privacy and nuisance long recognized by the common law, consumers who allege a violation of the TCPA and FCRA adequately allege a concrete "injury in fact" sufficient to satisfy Article III's standing requirements.

    c. <u>The Telemarketing Calls Caused Plaintiff Wasted Time</u>

The first post-*Spokeo* decision to address whether a mere allegation of a TCPA violation satisfies Article III's requirement of "injury in fact" holds that wasting the recipient's time is a concrete injury that satisfies Article III:

> Here, the court is satisfied that Plaintiffs' allegations demonstrate "concrete injury" as elucidated in *Spokeo*. In *Spokeo*, the "injury" Plaintiffs incurred was arguably merely procedural and thus non-concrete. In contrast, the TCPA… violations alleged here, if proven, required Plaintiffs to waste time answering or otherwise addressing widespread robocalls. The use of the autodialer, which allegedly enabled Defendants to make massive amounts of calls at low cost and in a short period of time, amplifies the severity of this injury. As Congress and Washington State's legislature agreed, such an injury is sufficiently concrete to confer standing.

*Booth v. Appstack, Inc.*, 2016 U.S.Dist LEXIS 68886, *15-17 (W.D. Wash. May 25, 2016). This decision is consistent with a number of pre-*Spokeo* decisions which also recognized that lost time is an adequate injury-in-fact in TCPA and other cases. *See Leung v. XPO Logistics, Inc.*, 2015 WL 10433667, *4 (N.D. Ill. Dec. 9, 2015) ("Leung alleges that he lost time in responding to XPO's call. … That is enough, so XPO's motion must be denied."); *Martin v. Leading Edge Recovery Solutions., LLC*, 2012 WL 3292838, at *3-4 (N.D. Ill. Aug. 10, 2012) ("[plaintiffs suffered an injury in fact] because they had to spend time tending to unwanted calls").

          d. Plaintiff suffered tangible concrete harm in the form of economic damages <u>from the use of his cellular telephone.</u>

Finally, not only has Plaintiff alleged concrete but "intangible" harms due to invasion of privacy, nuisance, trespass to chattel and wasted time, but he also sustained "tangible" sustained economic harm as a direct result of Target Advance's illegal telemarketing practices. The calls at issue were received on a cell phone used by and paid for by Plaintiff. The FCC has long recognized that the recipient of telemarketing calls to a cell phone is "charged" for such calls, even if the cell phone subscribes to a plan that charges a flat monthly rate. *See In re Rules and Regulations Implementing the TCPA of 1991,* 18 FCC Rcd. 14014, 14115 (2003); *In re Rules and Regulations Implementing the TCPA of 1991*, 23 FCC Rcd. 559, 562 (2007); *In re Rules and Regulations Implementing the TCPA of 1991*, 27 FCC Rcd. 1830, 1839–40 (2012); *Fini v. DISH Network L.L.C.*, 955 F. Supp. 2d 1288, 1297 (M.D. Fla. 2013)*; Lee v. Credit Management*, 846 F. Supp. 2d 716, 729 (S.D. Tex. 2011). As Plaintiff paid for his monthly cell phone on which he received the telemarketing calls at issue, Plaintiff has alleged a tangible injury in fact sufficient to satisfy Article III's standing requirement. *See Warnick v. DISH Network, LLC,* 2014 U.S.Dist. LEXIS 138381 * 43-46 (D. Colo. Sept. 30, 2014) (rejecting argument that because plaintiff did not have a pay per call plan he did not suffer any injury as a result of the calls at issue); *Soppet v. Enhanced Recovery Co.*, LLC, 679 F.3d 637, 638 (7th Cir. 2012) (consumers ultimately bear the costs of calls to violative calls to cell phones regardless of "whether they pay in advance or after the minutes are used"). This "tangible" harm is sufficient to confer standing under *Spokeo*.

The invasion of privacy and the allegation that the illegal calls cost Plaintiff money—financial harm—are not speculative future injuries or injuries based on the violation of rights provided in a statute. *See e.g. Jamison v. Esurance Insurance Services, Inc.,* 2016 WL 320646, *3 (N.D. Tex. Jan. 27, 2016) ("Here, Jamison alleged that when Esurance violated the TCPA, it

caused her to incur cellular telephone charges or to reduce her previously-paid-for cellular telephone time, and that it invaded her privacy. Dkt. 7, Pl.'s First Am. Compl. ¶ 49. At this stage, this pleading is sufficient to establish an injury in fact.").

## CONCLUSION

For the foregoing reasons, defendants' motion should be denied.

Dated: October 15, 2018     By:   */s/ Bryan Anthony Reo*_____

Bryan Anthony Reo  
REO LAW LLC  
P.O. Box 5100  
Mentor, OH 44061  
Business: (216) 505-0811  
(Mobile): (440) 313-5893  
(E): Reo@ReoLaw.org  
*Pro Hac Vice*

Clayton S. Morrow  
Email: csm@consumerlaw365.com  
Morrow & Artim, PC  
304 Ross Street, 7th Floor  
Pittsburgh, PA 15219  
Telephone: (412) 281-1250

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2018, I filed the foregoing with the Clerk of Court, which will automatically send notification of such filing to all attorneys of record by placing the same on the Court's electronic docket.

                                                 */s/ Bryan Anthony Reo*_____
                                                   Bryan Anthony Reo