**REO LAW, LLC**
By: Bryan Anthony Reo
P.O. Box 5100
Mentor, OH 44061
(Business): (216) 505-0811
(Mobile): (440) 313-5893
(E): Reo@ReoLaw.org
*Attorney for James Everett Shelton*
*Pro Hac Vice*

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES EVERETT SHELTON, | |
| Plaintiff | |
| v. | Case No. 2:18-cv-02070 |
| TARGET ADVANCE LLC | |
| Defendants | Honorable Nitza I. Quiñones Alejandro |

## PLAINTIFF'S OPPOSITION TO DEFENDANT TARGET ADVANCE LLC'S SUMMARY JUDGMENT MOTION

## FACTUAL HISTORY AND PROCEDURAL BACKGROUND.

Defendant Target Advance, LLC has filed a Motion to Dismiss, which has been converted as a Motion for Summary Judgment by the Court. This motion lacks merit and fails to provide a sufficient basis by which Defendant would be entitled to judgment as a matter of law. Nor do the motion or the accompanying exhibits demonstrate the absence of a genuine dispute of material fact. Indeed, the motion actually serves to demonstrate the clear the existence of genuine disputes of material fact.

Defendant provided as evidence an affidavit from defendant's sales manager, Mark Davidov. This affidavit states, "our company uses an automatic dialer to increase the efficiency of our sales staff's telephone marketing." Id at 2. Target Advance claims they do not make what are defined as robocalls under the TCPA, immediately after stating that they use an ATDS device for marketing purposes.

Telemarketing calls placed using automatic telephone dialing system ("ATDS") are prohibited by the Telephone Consumer Protection Act ("TCPA"), and Plaintiff has a pursue a private right of action to recover statutory damages for such violations. *See* 47 U.S.C. § 227(b)(1)(A)(iii). The calls were made despite the fact that Plaintiff's telephone number was on the National Do Not Call Registry. This is a violation of 47 U.S.C 227(c)(3)(F).

Plaintiff has alleged that Defendants lacked express prior written consent, or express prior consent of any sort, by which to contact Plaintiff on his cellular phone via an ATDS. See See Pl.'s Amended Complaint at 42.

47 C.F.R. 64.1200(a)(2) has a requirement for prior express **written** consent (for autodialed telemarketing calls to cell phones in violation of 47 U.S.C. § 227(b)). During the first two ATDS-initiated telemarketing calls from Defendants on January 17, 2018 and January 22, 2018, Plaintiff was not immediately able to identify who was calling. See Pl.'s Amended Complaint at 28-29. Later on January 22, 2018, Plaintiff returned a missed call and was connected with Target Advance. Id at 32.

Plaintiff answered sales related questions posed to him by Defendants solely for the purpose of determining the identity of the illicit telemarketer. Id at. 35. Plaintiff stated that Defendants were not to contact him again, and said he would call Target Advance back if he was interested. Id. at 35.

Despite not having permission (verbally or in writing) to place more calls to Plaintiff, Defendant placed more calls. Id at 37. See Exhibit A, which is a true and correct copy of an e-mail Plaintiff sent to Target Advance on 4/18/2018 with a cease and desist request.

Plaintiff then initiated the instant action against Defendants on 5/17/2018, and had them served multiple times by process servers on 6/1/2018 and again on 8/24/2018. See ECFs No. 5 and 13. Plaintiff's lawsuit should have served to provide ample notice to Defendants that Plaintiff truly did not want to be called. Instead of placing Plaintiff's number on an internal do not call list and purging his number from their calling database, Defendants continued to make autodialed telemarketing calls the Plaintiff. On 8/29/2018 at 10:22 AM, Plaintiff received a telemarketing call from Target Advance and spoke to "Elijah Gonzalez" Id at 49, 51. Then at 11:03 and 11:04 AM on the same day, Plaintiff received two (2) more ATDS calls from the defendants. See Pl.'s Amended Complaint at 57. Plaintiff had also previously received an email from Defendant's employee Elijah Gonzalez confirming Defendant had been calling Plaintiff. See Exhibit B.

Plaintiff has, at all relevant times prior to, and even during, this litigation, made numerous and repeated "do not call" requests to Defendants; requests that Defendants have dishonored.

## LAW AND ARGUMENT

As an initial matter, a defendant bears the burden of proving prior express consent as an affirmative defense. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Declaratory Ruling,* 23 F.C.C. Rcd. 559, 565 ¶ 10 (Jan. 4, 2008) ("we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent"); *Van Patten v. Vertical Fitness Grp., LLC,* 22 F.Supp.3d 1069, 1073 (S.D. Cal. 2014).

Grant v. Capital Mgmt. Servs., L.P., 449 Fed. Appx. 598, 600 n.1 (9th Cir. 2011) (unpublished disposition) (Express consent is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof).

Defendant has not yet answered the complaint nor asserted any affirmative defenses, so Plaintiff's complaint, combined with an affidavit stating that he did not provide his prior express written consent is sufficient to meet the burden of producing evidence that demonstrates a genuine dispute of material fact.

Express consent is `[c]onsent that is clearly and unmistakably stated.' Black's Law Dictionary 323 (8th ed. 2004). *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (applying that definition to express consent as the term appears in the Telephone Consumer Protection Act).

Plaintiff also looks to an FCC Report and Order regarding telemarketers that requires that "the seller must secure a **written** agreement between itself and the consumer showing that the consumer agrees to receive autodialed or prerecorded telemarketing calls from the seller." *Id.* at 7 (quoting *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order,* 27 FCC Rcd. 1830, 1872 ¶ 24 (Feb. 15, 2012)). Defendants do not have a **written** agreement with Plaintiff showing that Plaintiff agreed to receive autodialed calls. The Plaintiff never wanted to receive calls from the Defendants, and much less never agreed in writing (or orally) to receive any calls back, whether manually dialed or employing an ATDS. Oral consent, which defendants never had, is not sufficient under the TCPA to make calls to numbers on the Do Not Call Registry. See 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2)(ii). Consent must be in **writing**. See the FCC's major Report and Order (FCC 12-21) of February 15, 2012: 33.

Consistent with the FTC's TSR, we conclude that a consumer's **written consent** to

receive telemarketing robocalls must be **signed** and be sufficient to show that the consumer: (1)

received "clear and conspicuous disclosure" of the consequences of providing the requested

consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or

on behalf of a <u>specific seller</u>; and (2) having received this information, agrees unambiguously to

receive such calls at a telephone number the consumer designates. [Emphasis added].

This holding is reflected in C.F.R. § 64.1200(a)(2):

[No person or entity may] Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the **prior express written consent** of the called party... [Emphasis added].

C.F.R. § 64.1200(f)(8): The term **prior express written consent** means an agreement, in writing, bearing the signature of the person called that clearly authorizes <u>the seller</u> to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. [Emphasis added].

Prior express written consent is also a requirement to call a number listed on the National

Do-Not-Call Registry, pursuant to 47 U.S.C. 227(c). See the FCC's major Report and Order

(FCC 03-153) of July 3, 2003, which says:


44. We note that section 227(a)(3) excludes from the definition of telephone solicitation calls to any person with "that person's prior express invitation or permission. Consistent with the FTC's determination, we conclude that for purposes of the national do-not-call list such express permission must be evidenced only by a signed, written agreement between the consumer and the seller which states that the consumer agrees to be contacted by <u>this seller</u>, including the telephone number to which the calls may be placed….We also note that telemarketers may not call consumers on the national do-not-call list to request their written permission to be called unless they fall within some other exemption. We believe that to allow such calls would circumvent the purpose of this exemption. Prior express permission must be obtained by some other means such as direct mailing. [Emphasis added]

## PLAINTIFF'S LITIGATION HISTORY IS IRRELEVANT AND DEFENDANTS USE OF STOOPS IS A RED HERRING

The attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants our most careful scrutiny. *Outley v. New York*, 837 F.2d 587, 591-92 (2d Cir. 1988). In casting aspersions on Mr. Shelton as a "professional litigant", Defendant ignores that courts brush aside the perverse notion that one who has been the victim of several different companies' illegal robocalls may not bring several different suits. *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (Easterbrook, J.) ("What the district judge did not explain, though, is why 'professional' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders."); *accord Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 U.S. Dist. LEXIS 157579, at *9 (N.D. Ill. June 13, 2011) ("Characterizing Plaintiff as a 'professional plaintiff' does not boost [the defendant's] argument in this discovery motion or any arguments in response to Plaintiff's motion for class certification.").

"Nothing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs only' rule." *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017). A plaintiff's "decision to enforce his rights under the" TCPA in at least 16 prior cases "does not negate the existence of a cognizable injury." *Abramson v. CWS Apartment Homes, LLC*, No. 16-426, 2016 U.S. Dist. LEXIS 146627, at *4, 7 (W.D. Pa. Oct. 24, 2016). Recently, in another of Plaintiff's TPCA cases in this district, Judge Chad F. Kenney admonished defense counsel, Norman M. Valz: **"I don't care how many ... cases he can file.... He can file one thousand eight hundred and fifty cases.... I'm going to handle each case on its merits.... Every single case**." Tr. Oral Argument 11:2-13, *Shelton v.*

*Arete Fin. Grp.*, Case No. 2:18-cv-02187-CFK (E.D. Pa. Dec. 14, 2018), ECF No. 28. This Court, too, should take Judge Kenney's approach, and handle this case on its merits.

Target Advance's reliance on Stoops to claim that Plaintiff lacks standing as a "professional plaintiff" is misplaced.

In *Stoops v. Wells Fargo Bank, N.A.,* 2016 U.S. Dist. LEXIS 82380 (W.D. Pa. June 24, 2016), the plaintiff, Ms. Stoops, openly admitted to having more than 40 cellular telephones which she kept in a shoe box and carried around with her for the purpose of receiving a substantial volume of telemarketing and debt collection calls, while openly admitting that she never used the phones for any personal purpose and never placed calls with them.

*See Id.* at *32 ("Q. Does anyone you know ever call you at these phone numbers? A. No, ma'am. Q. Did you ever use any of these phone numbers to call anyone? A. No, ma'am…Q. How did you use this phone number after it was activated, if at all? A. For my business. Q. Okay. When you say for your business, what do you mean? A. Suing clients like yours, Wells Fargo, for violating the TCPA.") *Stoops*, ECF No. 54-7.

Plaintiff Shelton in the instant action has exactly one telephone which he carries in his pocket for the purpose of calling friends and family. Shelton is a far cry from Ms. Stoops. Shelton is not in the business of carrying around four dozen phones in a box hoping to be called incessantly. Indeed unlike Ms. Stoops, Mr. Shelton took the active step of placing his single solitary number on the National Do Not Call Registry to minimize the number of calls he would receive.

See *McBride v. Ally Fin., Inc.*, Civil Action No. 15-867 (W.D. Pa. Sep. 5, 2017) "Plaintiff has testified that he verbally-revoked consent in September 2014, and, although Defendant says

this is inconsistent with its records, a credibility determination is required to know which side to credit (i.e., Plaintiff's sworn statements versus the completeness and accuracy of Defendant's records)."

In the instant action Mr. Shelton has made a sworn statement that he did not consent to the phone calls, and to the circumstances surrounding the calls that Defendant made.

## CONCLUSION

Defendant's affidavit that they did not call Plaintiff, when taken with Plaintiff's affidavit, must result in the evidence being construed in a light most favorable to the non-movant because there are clear genuine disputes as to material facts and the credibility of the relevant parties must be weighed by the ultimate trier of fact.

For reasons previously discussed, defendant's motion should be denied in its entirety.

Dated: February 21, 2019        By:   _/s/ Bryan Anthony Reo_____
                                       Bryan Anthony Reo
                                       REO LAW LLC
                                       P.O. Box 5100
                                       Mentor, OH 44061
                                       Business: (216) 505-0811
                                       (Mobile): (440) 313-5893
                                       (E): Reo@ReoLaw.org
                                       *Pro Hac Vice*

                                       Clayton S. Morrow
                               Email: csm@consumerlaw365.com
                                       Morrow & Artim, PC
                                    304 Ross Street, 7th Floor
                                     Pittsburgh, PA 15219
                                    Telephone: (412) 281-1250

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2019, I filed the foregoing with the Clerk of Court,

which will automatically send notification of such filing to all attorneys of record by placing the

same on the Court's electronic docket.

*/s/ Bryan Anthony Reo*_____
Bryan Anthony Reo