# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES EVERETT SHELTON** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 18-2070** |
| **v.** | : | |
| | : | |
| **TARGET ADVANCE LLC** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                   APRIL 16, 2019

## MEMORANDUM OPINION

### INTRODUCTION

Before this Court is Defendant Target Advance LLC's ("Defendant") motion to dismiss Plaintiff James Shelton's ("Plaintiff") amended complaint, based on a lack of constitutional standing and/or prudential standing under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). [ECF 21]. Plaintiff has opposed the motion. [ECF 22]. Plaintiff's amended complaint was brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and seeks damages based on allegations that Defendant placed automatic dialed sales calls to a cellphone number used for both personal and business matters. [ECF 13]. Because Defendant's motion to dismiss and Plaintiff's response both presented matters outside the operative pleadings, this Court entered an Order advising the parties that, pursuant to Rule 12(d), the motion to dismiss would be treated as a motion for summary judgment under Rule 56, [ECF 23], and allowing the parties to file supplemental briefs, which they did. [ECF 24, 25]. For the reasons set forth, Defendant's motion is granted, *in part*, and denied, *in part*.

## BACKGROUND

In the amended complaint, Plaintiff asserts causes of action for the negligent and knowing/willful violations of: (1) Title 47 U.S.C. § 227(b)(1)(A)(iii)'s prohibition against ATDS calls to cellular telephone numbers (Counts I & II); (2) Title 47 U.S.C. § 227(c)(3)(F)'s prohibition against sales calls to telephone phone numbers listed on the National Do Not Call Registry (Counts III & IV); (3) Title 47 C.F.R. § 64.1200(d)(1)'s requirement that entities making telemarketing calls have a written policy, available upon demand, for maintaining a do-not-call list (Counts V & VI); and (4) Title 47 C.F.R. § 64.1200(d)(3)'s requirement that entities making telemarketing calls honor residential telephone subscribers' requests to not call them (Counts VII & VIII). Plaintiff alleges that he received ten calls from Defendant, nine of which were made using an automatic dialing system ("ATDS"), to a phone number he had listed on the National Do Not Call Registry.

Once a motion to dismiss is converted into a motion for summary judgment, this Court must consider the evidence and supported relevant facts in the light most favorable to the non-moving party, here, Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). Having done so, the relevant facts in this matter are summarized as follows:[1]

> Plaintiff's cellphone number (the "Phone Number") has been listed on the National Do Not Call Registry since 2015. Plaintiff uses the Phone Number for personal matters and for a business he owns called Final Verdict Solutions, which is in the judgment collection business and has been registered with the Commonwealth of Pennsylvania since March 2016. On its website, Final Verdict Solutions advises telemarketers that the Phone Number does not wish to receive their calls, and that they will be sued if they call it. Final Verdict Solutions has "successfully recovered approximately 30 judgments totaling more than $100,000," and has "outstanding judgment receivables currently worth more than $600,000." Plaintiff has filed no fewer than 29 civil actions seeking relief under the TCPA.

---

[1]     These facts are derived from the parties' respective briefs and submissions. While most of the facts material to Defendant's motion are undisputed, where disputed, such disputes are noted and, if material, construed in Plaintiff's favor.

Defendant is in the business of providing business loans and merchant cash advance services. Defendant uses an ATDS to increase the efficiency of its sales staff's telephone marketing.

Plaintiff received at least ten telemarking calls to the Phone Number from Defendant, during which "a scripted sales pitch about business loans and/or merchant cash advance services" was made. At the beginning of those calls, Plaintiff alleges that he heard a distinctive "bloop" noise, followed by a pause, after which a representative came on the line. Plaintiff alleges that based on his experience, an ATDS was used. Plaintiff feigned interest in the services being advanced in order to ascertain the identity of the caller. Once Plaintiff so identified Defendant, he requested verbally, and later in writing via email, that Defendant cease calls to the Phone Number. However, Defendant continued to call the Phone Number, including after Plaintiff filed the initial complaint in this lawsuit.[2] Plaintiff also requested a copy of Defendant's "Do Not Call/TCPA compliance policies," but did not receive it.

**LEGAL STANDARD**

Rule 56 governs the practice of motions for summary judgment. Fed. R. Civ. P. 56. Specifically, this rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Under Rule 56, the court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.

---

[2]    Defendant disputes this fact. In an affidavit, Defendant's sales manager asserts that when call recipients state that they do not want to receive further calls, they are purged from Defendant's call lists. Because Plaintiff appeared on Defendant's "prospects list," and several prospects lists from different sources, the affiant deduced that Plaintiff did not indicate that he no longer wished to receive calls but, to the contrary, he indicated that he desired more information. (ECF 24-1).

*Anderson*, 477 U.S. at 251–52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that shows an absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145–46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims and/or defenses, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. *Celotex*, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative. *Anderson*, 477 U.S. at 249–50. In order to defeat a motion for summary judgment, there must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. *Id.* at 252; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 (3d Cir. 1999).

**DISCUSSION**

In its motion, Defendant argues that Plaintiff, whom Defendant describes as a professional TCPA litigant, lacks standing to bring this complaint because Plaintiff has formulated a business model to encourage telemarketers to call his cellphone number so that he can later sue the telemarketers under the TCPA. In light of this apparent scheme and litigious practice, Defendant argues that Plaintiff has not suffered an injury-in-fact and is not within the zone of interests the TCPA was enacted to protect. In response, Plaintiff argues that his personal litigation history is irrelevant and that he has standing to bring suit anytime he receives phone calls on his personal cellphone that violate the provisions of the TCPA.

The power of the judiciary, rooted in Article III of the United States Constitution, "extends only to 'Cases' and 'Controversies.'" U.S. Const., art. III, § 2; *Long v. SEPTA*, 903 F.3d 312, 320-21 (3d Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff invoking federal jurisdiction bears the burden of establishing the "irreducible constitutional minimum" for standing by demonstrating (1) an injury-in-fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan*, 504 U.S. at 560-61). The existence of Article III standing often turns on the injury-in-fact element. *Spokeo*, 136 S. Ct. at 1547. Plaintiff, as the party invoking federal jurisdiction, has the burden of demonstrating each element. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).

To establish an injury-in-fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (internal citations

5

omitted).  To be "concrete," an injury must be "real" as opposed to "abstract," but it need not be "tangible." *Id.* at 1548-49.  Recently, the United States Court of Appeals for the Third Circuit ("Third Circuit") held that "[w]hen one sues under a statute alleging 'the very injury [the statute] is intended to prevent,' and the injury 'has a close relationship to a harm . . . traditionally . . . providing a basis for a lawsuit in English or American courts,' a concrete injury has been pleaded." *Susinno v. Work Out World Inc.*, 862 F.3d 346, 348-49 (3d Cir. 2017) (alterations in original) (quoting *In re Horizon Healthcare Srvs. Inc. Data Breach Litig.*, 846 F.3d 625, 639-40 (3d Cir. 2017)).

Separate and apart from constitutional standing, courts have recognized under the doctrine of statutory standing that the "'presumption that a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked.'" *Leyse*, 804 F.3d at 324 (quoting *Lexmark Int'l*, 134 S. Ct. at 1388).  The Supreme Court has noted that "[r]ead literally, the broad language [of a statute] might suggest that an action is available to anyone who can satisfy the minimum requirements of Article III," but found it unlikely that "Congress meant to allow all factually injured plaintiffs to recover." *Lexmark Int'l*, 134 S. Ct. at 1388.  When considering standing under a statutorily created cause of action, the breadth of the zone of interests depends on the provisions and purposes of the statute being analyzed." *Leyse*, 804 F.3d at 324.

The TCPA is a remedial statute enacted "to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate," *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. at 7979-80, which shields individual consumers from receiving unsolicited automated calls, *i.e.*, robocalls. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013).  To this end, the TCPA prohibits or limits

robocalls in various ways including, *inter alia*, prohibiting robocalls "to any telephone number

assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii); *see also Daubert v.*

*NRA Group, LLC*, 861 F.3d 382, 389 (3d Cir. 2017).[3]  With regard to landlines, the TCPA

distinguishes between "residential" and "business" lines.  For example, robocalls to "any

residential telephone line" are strictly prohibited, *see* 47 U.S.C. § 227(b)(1)(B), while there is no

prohibition against robocalls to businesses except to prohibit robocalls made "in such a way that

two or more telephone lines of a multi-line business are engaged simultaneously."

*Id.* § 227(b)(1)(D).  The private right of action embedded in the TCPA allows a person or entity to

"bring an action to enjoin violations of the statute and recover actual damages or $500 in statutory

damages per violation." *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 323 (3d Cir. 2015) (citing

*id.* § 227(b)(3)).[4]  Judicial analysis of the TCPA's scope is guided by the statute's text, the Federal

Communications Commission's (FCC's) interpretations of the statute, and the statute's purpose.

*Gager*, 727 F.3d at 268.

In holding that a recipient of a single robocall may have standing to bring a claim under

the TCPA, the Third Circuit explained:

> Congress squarely identified this injury.  The TCPA addresses itself directly to
> single prerecorded calls [to] cell phones, and states that its prohibition acts "in the
> interest of [ ] privacy rights." 47 U.S.C. § 227(b)(2)(C). The congressional findings
> in support of the TCPA likewise refer to complaints that "automated or prerecorded
> telephone calls are a nuisance [and] . . . an invasion of privacy." Pub. L. 102-243,
> § 2. We therefore agree with [the plaintiff] that in asserting "nuisance and invasion

---

[3]     The full provision prohibits robocalls "to any telephone number assigned to a paging service,
cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any
service for which the called party is charged for the call, unless such call is made solely to collect a debt
owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). This Court notes that the Third
Circuit has held that the phrase "or any service for which the called party is charged for the call" does not
apply to robocalls placed to cellphones. *Susinno*, 862 F.3d at 348-49. Stated differently, § 227(b)(1)(A)(iii)
prohibits robocalls to cellphones, irrespective of whether the recipient is charged for the call.

[4]     Treble damages are awarded if the defendant willfully or knowingly violates the TCPA. 47 U.S.C.
§ 227(b)(3)(C).

of privacy" resulting from a single prerecorded telephone call, her complaint asserts "the very harm that Congress sought to prevent," arising from prototypical conduct proscribed by the TCPA. App. 11 (First Amended Complaint); *see also Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (finding two unwanted text messages constituted a concrete injury under the TCPA, as they "present the precise harm and infringe the same privacy interests Congress sought to protect").

*Susinno*, 862 F.3d at 351.

However, the Third Circuit has also noted that for standing purposes, "[s]omeone with a generalized interest in punishing telemarketers . . . would not qualify on that basis alone" as having "suffered the particularized injury required to maintain an action in federal court for a statutory violation." *Leyse*, 804 F.3d at 323 (citations omitted).

Here, Defendant argues that Plaintiff did not suffer an injury in fact and, therefore, lacks constitutional standing because he associated the Phone Number with a publicly listed business in hopes of receiving robocalls. Defendant also contends, based on the same assertion of Plaintiff's apparent robocall solicitation, that Plaintiff cannot be considered in the "zone of interests" the TCPA was enacted to protect and, thus, lacks statutory standing.[5] In support of its argument, Defendant relies primarily on *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016). In *Stoops*, the plaintiff purchased at least thirty-five cellphones with the specific intent of receiving robocalls so that she could thereafter bring lawsuits under the TCPA. To that end, the plaintiff, a Pennsylvania resident, registered these cellphones with different zip codes from areas in Florida which she knew were economically depressed and would receive a high level of robocalls because of the pervasive loan and credit card defaults in the areas. *Id.* at 787-88. In her

---

[5]     Defendant frames its "zone of interests" argument as one of prudential standing. However, the Supreme Court has held that zone of interests is a component of statutory, not prudential standing. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-28 (2014); *see also Leyse*, 804 F.3d at 323-27 (considering the zone of interests of the TCPA in a statutory standing analysis).

deposition testimony, the plaintiff stated that she had a "business suing offenders of the TCPA";

that she had specifically bought the cellphones in order to manufacture TCPA claims; and that she

did not use the cellphones for any other purpose. *Id.* at 799. The *Stoops* court found that "[b]ecause

Plaintiff has admitted that her only purpose in using her cellphones is to file TCPA lawsuits, . . . .

the calls did not constitute 'the nuisance, invasion of privacy, cost, and inconvenience' from which

Congress intended to protect consumers." *Id.* at 800 (quoting *In re Rules Implementing the Tel.*

*Consumer Prot. Act of 1991*, 30 FCC Rcd. at 7979-80). Accordingly, the court held that the

plaintiff did not have standing because she had not suffered an injury-in-fact. The court also held

that the plaintiff was not in the zone of interests the TCPA was enacted to protect.

Here, unlike in *Stoops*, Plaintiff's cellphone is for both personal and business use.

However, based on Plaintiff's allegations, it appears that the calls at issue were directed and made

to the business use of the cellphone, and not to his personal use. Indeed, Defendant provides

business loans and merchant cash advance services, and each call Plaintiff allegedly received

included "a scripted sales pitch about business loans and/or merchant cash advance services."

As noted, the TCPA broadly prohibits robocalls "to *any* telephone number assigned to a . .

. . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). The statute makes

no distinction between cellphones being used for personal or business use.[6] Relying on the strict

---

[6]     This is in contrast to the distinctions noted above that the TCPA makes between robocalls to residential landlines and business landlines, namely, offering less stringent prohibitions against robocalls to business landlines. See 47 U.S.C. § 227(b)(1)(B), (b)(1)(D). In the context of landlines, at least one district court has held that robocalls to a phone number used both for residential and business purposes do not violate the TCPA. *Bank v. Independence Energy Group LLC*, 2015 WL 4488070 (E.D.N.Y. July 23, 2015). The court in *Bank* framed the question presented as whether a home telephone number held out by the subscriber to the public as a number used by the subscriber's business could qualify as a "residential" telephone number under the TCPA. The court noted that the TCPA was enacted "to protect the privacy interests of residential telephone subscribers," but "provides considerably less protection for business telephone lines than for residential lines." *Bank v. Independence Energy Group LLC*, 2014 WL 49546183 (E.D.N.Y. Oct. 2, 2014). The court ultimately concluded that a home telephone number held out to the public as a business number could not qualify as a "residential" number under the TCPA. *Id.* at *4. The plaintiff in *Bank* appealed to the Second Circuit, where oral arguments were held. *Bank v. Independence*

language interpretation of the statute, other courts have concluded that the TCPA prohibits robocalls to *any* cellphone whether used for personal or business reasons. *See, e.g., Warnick v. Dish Network LLC*, 2014 WL 12537066 (D. Colo. Sept. 30, 2014), at *9-11; *De Los Santos v. Millward Brown, Inc.*, 2014 WL 2938605, at *7 (S.D. Fla. June 30, 2014); *Cellco P'ship v. Plaza Resorts, Inc.*, 2013 WL 5436553, at *5 (S.D. Fla. Sep. 27, 2013). This Court is persuaded by and joins in the conclusion that the plain language of the TCPA prohibits robocalls to any telephone number assigned to a cellphone, whether the cellphone is used for personal matters, business, or both. Having so concluded, this Court will now consider the impact, if any, of *Stoops*.

As indicated, the *Stoops* court found that because the plaintiff had admitted that her only purpose in using her numerous cellphones was to file TCPA lawsuits, she had not suffered an injury-in-fact and was not in the zone of interests the TCPA was enacted to protect and, therefore, did not have standing. Here, the website for Plaintiff's business, Final Verdict Solutions, advertises as a professional judgment recovery business. However, the record suggests that Final Verdict Solutions has the sole purpose of luring business-to-business telemarketers (such as Defendant) into calling the Phone Number which is held out to the world as a business telephone number, so that Plaintiff can bring TCPA actions against the telemarketers who call him. Defendant points to the many judgements Plaintiff claims to have obtained and argues that Plaintiff is misusing the TCPA by turning it into a profit generating scheme, as in *Stoops*. It is premature at this juncture to determine whether or not this contention is true. Genuine issues of material fact exist as to whether all, some or none of the "30 judgments totaling more than $100,000," and the

---

*Energy Group LLC*, No. 15-2391 (2d Cir.). However, in 2016, the plaintiff requested a stay of proceedings in light of a petition for a declaratory ruling he filed with the FCC to determine whether a telephone line in a home that is used for business purposes may be considered a "residential line" under the TCPA. The Second Circuit has not granted the stay, and the FCC has yet to issue a ruling. While *Bank* involved landlines, its rationale is compelling since society is tending to move away from landlines to the exclusive use of mobile phones.

"outstanding judgment receivables currently worth more than $600,000," which Plaintiff cites in his affidavit to illustrate the success of Final Verdict Solutions, were generated solely from his TCPA actions or from other judgment recovery ventures. If the former is the case and the sole purpose of Final Verdict Solutions is to drum up TCPA litigation by inducing business-to-business robocalls, *Stoops* would appear to bar Plaintiff's claims since he likely has not suffered an injury-in-fact and his claims are not within the zone of interests the TCPA was enacted to protect. *Leyse*, 804 F.3d at 323 ("[s]omeone with a generalized interest in punishing telemarketers . . . would not qualify on that basis alone" as having "suffered the particularized injury required to maintain an action in federal court for a statutory violation."); *cf. Susinno*, 862 F.3d at 351 (holding that where the plaintiff allegedly suffered "nuisance and invasion of privacy" resulting from a single *unsolicited* prerecorded telephone call, her complaint asserts "the very harm that Congress sought to prevent," arising from prototypical conduct proscribed by the TCPA). However, discovery is required to resolve these factual issues.

Regardless, based on the record, the Court concludes that Plaintiff does not have standing to bring claims predicated on § 227(c)(3)(F)'s prohibition against sales calls to telephone phone numbers listed on the National Do Not Call Registry. The Phone Number is also for business use, and business numbers are not permitted to be registered on the National Do Not Call Registry. *Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 9779, 9785 (June 17, 2008) ("As the Commission has previously stated, the National Do Not Call Registry applies to 'residential subscribers' and does not preclude calls to businesses."); 47 C.F.R. § 64.1200(c)(2) (prohibiting telephone solicitation to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."); *cf.* 16

C.F.R. § 310.4(b)(1)(iii)(B) ("It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . intiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the 'do-not-call' registry[.]"); *id.* § 310.6(b)(7) (exempting from liability, "[t]elephone calls between a telemarketer and any business, except calls to induce the retail sale of nondurable office or cleaning supplies."). Indeed, the website of the Federal Trade Commission ("FTC") regarding the National Do Not Call Registry features frequently asked questions, one of which is asked and answered as follows. "Can I register my business phone number or a fax number? The National Do Not Call Registry is only for personal phone numbers. Business-to-business calls and faxes are not covered." FEDERAL TRADE COMMISSION CONSUMER INFORMATION, https://www.consumer.ftc.gov/articles/0108-national-do-not-call-registry (last visited Apr. 16, 2019). The FTC's website also has a page titled "Q&A for Telemarketers & Sellers About DNC ["Do Not Call"] Provisions in TSR ["Telemarketing Sales Rule"]," which states under the heading "Business-to-Business Calls," "Most phone calls to a business made with the intent to solicit sales from that business are exempt from the Do Not Call Provisions." https://www.ftc.gov/tips-advice/business-center/guidance/qa-telemarketers-sellers-about-dnc-provisions-tsr (last visited Apr. 16, 2019). Accordingly, because Plaintiff held the Phone Number out to the world as a business phone number, he could not register it on the National Do Not Call Registry for purposes of avoiding business-to-business calls, such as those giving rise to this action. Thus, Plaintiff has not suffered an injury-in-fact by way of receiving business-to-business robocalls on a phone number he registered on the National Do Not Call Registry, and his claims predicated on § 227(c)(3)(F) are dismissed for a lack of standing.

## CONCLUSION

For the reasons stated herein, Defendant's motion is granted, *in part*, and Counts III and IV are dismissed for a lack of standing. Defendant has fourteen (14) days to respond to the remaining claims. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.